**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**(Civil Division)**

| | |
|---|---|
| ESTHER OVIOSU )<br>1810 Reddy Drive, #5118 )<br>Woodbridge, VA 22191 )<br> )<br>Plaintiff, )<br> )<br>v. ) | Civil Action No.: _____ |
| )<br>CHAD WOLF, Acting Secretary, )<br>U.S. Department of Homeland Security ) | **Jury Demanded** |
| )<br>Defendant. )<br> ) | |

## COMPLAINT

Plaintiff, Esther Oviosu, by and through undersigned counsel, files suit against the named Defendant for the cause of action stated as follows:

## INTRODUCTION

1. Plaintiff, Esther Oviosu ("Plaintiff" or "Ms. Oviosu") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*.; and the Civil Rights Act of 1991, 42 U.S.C. § 1981a, for relief from discrimination based on her race (Black), color (Dark skinned), and reprisal (Prior EEO Activity).

2. Defendant, Chad Wolf ("Defendant" or "Acting Secretary Wolf") discriminated against Plaintiff on the basis of her race (Black), color (Dark Skinned), and reprisal (Prior EEO Activity), during the course of her employment with the Department of the Homeland Security (United States Citizenship and Immigration Services) ("the Agency").

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this Complaint pursuant to Title VII, as amended, 42 U.S.C. §§ 2000e-16, 2000e-5(f)(1) and (3). Further, this Court has jurisdiction over this Complaint because there is diversity of the parties and a question of federal law is presented. 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity).

4. Venue properly lies within this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3). Acting Secretary Wolf is an officer of the Agency, which is headquartered in the District of Columbia. Acting Secretary Wolf performs a significant amount of his official duties in the District of Columbia and resides, for the purposes of venue, within the District of Columbia. *See, e.g., Bartman v. Cheney*, 827 F.Supp. 1 (D.D.C. 1993) (holding that the Secretary of Defense resides in the District of Columbia for the purposes of 28 U.S.C. § 1391).

**PARTIES**

5. Plaintiff is currently domiciled at 1810 Reddy Drive, #5118, Woodbridge, VA 22191. At all relevant times, Plaintiff has been an employee of the United States Department of Homeland Security, United States Citizenship and Immigration Services. Plaintiff is a resident of Prince William County, Virginia, and a United States Citizen.

6. Acting Secretary Wolf is being sued in his official capacity as the Acting Secretary for the United States Department of Homeland Security.

7. Defendant is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of employees or agents of Defendant; in addition, Defendant is the employer of persons who have committed negligent, discriminatory acts

and/or omission against Plaintiff within the course and scope of their employment. Therefore, Defendant is liable pursuant to the doctrine of *Respondeat Superior*.

## EXHAUSTION OF REMEDIES

8.  Plaintiff has exhausted all of her administrative remedies.

9.  On July 7, 2017, Plaintiff timely filed a formal EEO Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC") for discrimination based on her race (Black), color (Dark Skinned), reprisal (Prior EEO Activity) for the adverse employment actions alleged herein.

10. On April 15, 2020, an Administrative Law Judge issued a Decision on the Agency's Motion for Summary Judgment, without a hearing, finding that Plaintiff failed to raise any genuine issues of material fact or issues of credibility relevant to the allegations of discrimination.

11. On May 26, 2020, the Agency issued a Final Agency Decision giving the Plaintiff 90 days to file a Federal Civil Action.

12. Plaintiff now timely files this action pursuant to the 29 C.F.R. § 1614.407(a).

## FACTS

13. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

14. In January 2010, Plaintiff was assigned to work in the Administrative Site Visit Verification Program, Fraud Division, Fraud Detection and National Security Directorate, U.S. Citizenship and Immigration Services.

15. In January 2010, Mary Ann Case (Caucasian) (White) (No Prior EEO Activity) was employed as the Branch Chief, Administrative Site Visit Verification Program, Fraud

Division, Fraud Detection and National Security Directorate, U.S. Citizenship and Immigration Services, and was Plaintiff's first line supervisor.

16. In 2010, Robert Blackwood (Caucasian) (White) (No Prior EEO Activity) was employed as the Chief, Fraud Division, Fraud Detection and National Security Directorate, U.S. Citizenship and Immigration Services, and was Plaintiff's second-line supervisor.

17. On or around May 7, 2010, Plaintiff met with Mr. Robert Blackwood and expressed to Mr. Blackwood, that due to Plaintiff's race and color, Ms. Case was leaving Plaintiff out of Administrative Site Visit Verification Program projects, did not allow Plaintiff to attend important meetings, and prevented Plaintiff from talking in meetings.

18. On May 17, 2010, Plaintiff hand delivered a letter to Mr. Blackwood reiterating what was stated at the in-person meeting, that Ms. Case was leaving Plaintiff out of Administrative Site Visit Verification Program projects, did not allow Plaintiff to attend important meetings, and prevented Plaintiff from talking in meetings.

19. As a result of Plaintiff's May 7 and May 17, 2010 protected EEO activity, wherein she reports to Mr. Blackwood that Ms. Case is discriminating against her due to her race and color, on May 27, 2010, Ms. Case emailed Mr. Blackwood and stated the following: "It is very disappointing that Esther's memo towards you requesting reassignment is focused on her negative personal feelings towards me, of which I was not aware. It is my belief that her accusations are a redirection of issues she is having in the performance of some of her duties as assigned."

20. On June 7, 2010, Plaintiff was assigned to a different supervisor, Shari Goldston, in a different branch within the Fraud Division.

21. On July 13, 2015, the Plaintiff was selected for the Supervisory Immigration Officer position, Administrative Site Visit Verification Program, Fraud Division, Fraud Detection and National Security Directorate. A total of 31 applicants were evaluated based on the following skill sets and experience: Knowledge & Experience in Immigration Law, Processes and Procedures; Prior Supervisory Experience; Specialized Experience (ASVVP); Research, Analytic Skills and Written Work Products; Prior Immigration Field and Liaison Experience; and Systems Experience (FDNS-DS, CLAIMS, etc.). Following a review of the 31 applications, 8 applicants were interviewed, including Plaintiff. The Plaintiff was interviewed by an Interview Panel which consisted of Tacho Jinn, Krystal Hodges, Jimmy Zenny, and Robert Pietrafesa. Plaintiff's references, supervisors, and Fraud Detection and National Security Directorate managers were contacted prior to the selection for insight into Plaintiff's capabilities and performance.

22. During the relevant time period, Mr. Jimmy Zenny, Branch Chief, Fraud Division, Fraud Detection and National Security Directorate was Plaintiff's first-line supervisor.

23. On March 31, 2016, Ms. Mary Ann Case, assumed the role of Chief, Fraud Division, Fraud Detection and National Security Directorate, thereby becoming Plaintiff's second-level supervisor.

24. Mr. Zenny provided in his deposition that he recommended Plaintiff for the Supervisory position because she "stood out as having knowledge of the program."

25. The Supervisory Immigration Officer Hiring Memo states "Ms. Oviosu has demonstrated that she bring [sic] extensive experience the areas of collaboration, team work, leadership, and historical knowledge of the Fraud Division's programs and missions which are invaluable qualities needed to serve in the capacity if SIO."

26. On April 29, 2016, after Plaintiff had served in the Supervisory position for 7 months and 23 days, Mr. Zenny issued the Plaintiff's 2016 Mid-Cycle Review. The Mid-Cycle Review stated the following about Plaintiff's <u>performance</u>:

> Oviosu keenly aware of her role and responsibilities as a first line supervisor and communicates to management her concerns and progression in meeting our priorities. SIO Oviosu primary duty is the Administrative Site Visit Verification Program (ASVVP). She has been instrumental in making sure that the field gets the support that it needs in order to meet the 10,000 completions mandated by the priorities.

27. The April 29, 2016 Mid-Cycle Review also stated the following about Plaintiff's <u>leadership abilities</u>:

> She is balanced in providing her expertise and clarifying issues when there have been disagreements among fellow team members. These actions are indicative of her leadership abilities and her effective liaison with management, co-workers and subordinates. She is promoting team work, transparency and cooperation. We look forward to her continued development as a Supervisory Immigration Officer.

28. The April 29, 2016 Mid-Cycle Review also stated the following about Plaintiff's <u>achievements</u>:

> She has taken her work seriously and Is [sic] motivated to achieve the FDNS FD goals. One of her most notable achievements with her team during this mid review has been the implementation of the OJT with WAS.
>
> - Assisted in the reviewing and revising the L-lA Paper

- Assisted In the crafting and editing of the Matter of Simeio Solutions, LLC memorandum

- Assisted In the crafting and reviewing of the senate Appropriations Report (SAR )

- Planned, Implemented the OJT Site Visit with WAS In coordination with NER

- Assisted in the editing of GS-11 PD, once approved, and assisted In Identifying the location to be sent to the field.

- Coordinated the bi-weekly ASVVP meetings and provide support to field.

- Meet with Staff occasionally as needed to assess their work, and to help develop them.

- Extreme Hardship: Represented FDNS at regulations development meetings with Office of Policy and Strategy.

- SIJ- Participate in drafting the Rule for SIJ

29. In June of 2016, while Mr. Zenny was on vacation, he left Plaintiff in the acting position of "Branch Chief" because he "trusted her."

30. When Mr. Zenny returned from his vacation, he praised and thanked the Plaintiff for performing the branch chief duties.

31. Ms. Paula Siler, co-worker, provided the following testimony regarding her experience working with the Complainant:

   Ms. Oviosu was very helpful.  She was also very dedicated.  She was there every day.  People came to her for help.  Sometimes she could not get things done on time

because she had to wait for information from other groups. It was not her fault she had to wait for data from other Divisions.

32. Mr. Timothy Shavers and Ms. Shari Golston both supervised the Plaintiff and testified that she was a good employee.

33. On August 26, 2016, eight calendar days before the end of her probationary period, Ms. Mary Ann Case removed the Plaintiff from the Supervisory Immigration Officer position and reassigned her effective September 4, 2016.

34. INS Policy Statement 1.1.206 Probationary Period for Supervisors and Managers provides that removals should be initiated by the employee's first line supervisor and should be initiated, whenever possible, no later than 60 days prior to the completion of the probationary period.

35. Ms. Case, Plaintiff's second-line supervisor and not Mr. Zenny, Plaintiff's first-line supervisor, drafted the August 26, 2016 removal letter removing the Plaintiff from the Supervisory Immigration Officer position.

36. Mr. Zenny first saw the removal letter after it was issued to Plaintiff because Ms. Case issued the removal letter to Plaintiff while Mr. Zenny was away at training.

37. Although Mr. Zenny was no longer Plaintiff's supervisor, he was tasked with completing her Fiscal Year 2016 Performance Appraisal (FY2016 PPA) in November of 2016.

38. Ms. Case reports that Mr. Zenny was reluctant to rate the Plaintiff's FY2016 PPA.

39. Mr. Zenny did not request a self-assessment from the Plaintiff prior to issuing her FY2016 PPA, although he normally requests self-assessments of employees.

40. On September 19, 2016, due to the August 26, 2016 removal, Plaintiff filed an informal

complaint on the bases of race, harassment, and retaliation.

41. On November 15, 2016, Ms. Teresa K. Prichard, ADR Program Manager, emailed Plaintiff acknowledging her October 6, 2016 request to mediate.

42. On November 16, 2016, Mr. Zenny emails Ms. Bell, LER Specialist, regarding the Plaintiff's FY2016 PPA and states, "Mary Ann wanted me to send you Esther's Final PPA for you to review and give us guidance."

43. On December 1, 2016, Ms. Belinda Bell, LER Specialist, emailed Mr. Jimmy Zenny regarding the preparation of Plaintiff's FY2016 PPA and stated the following:

"You removed a proposed sentence that I think is important to further explain why the leading competency was unacceptable. I added a sentence that reads,

> However, Ms. Oviosu had challenged in leading her staff to meet numerous other program requirements. This resulted in incomplete and untimely submissions or the need for the Branch Chief to complete the assignments."

44. On December 1, 2016, Mr. Zenny responded to Ms. Bell's email regarding Ms. Bell's proposed inclusion of the sentence in Plaintiff's FY2016 PPA which reads, "This resulted in incomplete and untimely submissions or the need for the Branch Chief to complete the assignments" and states that he is having difficulty putting that sentence in and suggests its removal from the FY2016 PPA because "as a division we constantly get tasking that have an unreasonable turnaround time and at times not even relevant to FD."

45. ADR Mediation was scheduled for December 6, 2016.

46. On December 1, 2016, Ms. Bell, informed Mr. Zenny that she prefers Mr. Zenny not email Plaintiff her FY2016 PPA prior to presenting it to her in person.

47. Between November 16, 2016 and December 6, 2016, Mr. Zenny, Ms. Case, and Ms. Bell scrambled to ensure Plaintiff received the FY2016 PPA by the December 6, 2016 scheduled mediation date.

48. The FY2016 PPA was issued to Plaintiff on December 6, 2016 only hours before her scheduled ADR Mediation.

49. The FY2016 PPA indicates Plaintiff received an Unacceptable in Competency Number 7 "Leadership" and in Goal Number 1 "Leading People in a Quality Work Environment which is in direct contradiction with her 2016 Mid-Cycle Review.

50. Prior to issuing Plaintiff her FY2016 PPA, at no point in time did Mr. Zenny ever provide the Plaintiff with a document, memo, letter, or email regarding alleged deficiencies, or her need to improve on the alleged deficiencies noted in the FY2016 PPA.

51. During Mr. Zenny's deposition, he testified that he used language from the August 26, 2016 removal letter, drafted by Ms. Case, in the FY2016 PPA.

52. Mr. Zenny also testified that in order to justify the Plaintiff's removal, she had to receive an "Unacceptable" rating on her FY2016 PPA. Prior to issuing Plaintiff an "Unacceptable" rating on her FY2016PPA, Mr. Zenny has never given any other employee an "Unacceptable" rating.

### CAUSES OF ACTION

**COUNT ONE**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. § 2000e, *et seq*.**
**(Employment Discrimination on the Basis of Race)**

53. Plaintiff is Black and, as such, is a member of a protected class.

54. As an employee of Defendant, Plaintiff was treated differently and subjected to disparate treatment in comparison to non-Black employees that Defendant employed.

55. Defendant has subjected Plaintiff to adverse employment actions, including her removal from the Supervisory Immigration Officer position and causing Plaintiff to receive an "Unacceptable" rating on her FY2016 PPA, and otherwise deprived Plaintiff of her rights as enjoyed by her non-Black coworkers.

56. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment because it resulted in a loss of benefits, promotional opportunities and other disadvantages in the workplace.

57. The reason(s) proffered for Defendant's unlawful conduct, including that the adverse actions taken against Plaintiff were a result of Plaintiff's poor performance, and her lack of responsibility for her alleged deficient performance, are not legitimate and would be pretext for its discriminatory conduct.

58. Defendant knew at all times during the events described throughout this Complaint that Plaintiff is Black.

59. Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her race (Black).

60. Defendant has limited Plaintiff in a way that deprives her of employment opportunities, workplace benefits and otherwise adversely affects her status as an employee because of her race (Black)

61. Other employees who were similarly situated but are members of a different protected class than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of employment.

62. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her race (Black).

63. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues to suffer, from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

64. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature.  Defendant's treatment and actions are ongoing.

65. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

### COUNT TWO
### Title VII of the Civil Rights Act of 1964, as amended,
### 42 U.S.C. § 2000e, *et seq*.
### (Employment Discrimination on the Basis of Color)

66. Plaintiff is Dark-skinned and, as such, is a member of a protected class.

67. As an employee of Defendant, Plaintiff was treated differently and subjected to disparate treatment in comparison to non-Dark-skinned employees that Defendant employed.

68. Defendant has subjected Plaintiff to adverse employment actions, including her removal from the Supervisory Immigration Officer position and causing Plaintiff to receive an "Unacceptable" rating on her FY2016 PPA, and otherwise deprived Plaintiff of her rights as enjoyed by her non-Dark-skinned coworkers.

69. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment because it resulted in loss of benefits, promotional opportunities and other disadvantages in the workplace.

70. The reason(s) proffered for Defendant's unlawful conduct, including that the adverse actions taken against Plaintiff were a result of Plaintiff's poor performance, and her lack of responsibility for her alleged deficient performance, are not legitimate and would be pretext for its discriminatory conduct.

71. Defendant knew at all times during the events described throughout this Complaint that Plaintiff is Dark-skinned.

72. Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her color (Dark-skinned).

73. Defendant has limited Plaintiff in a way that deprives her of employment opportunities, workplace benefits and otherwise adversely affects her status as an employee because of her color (Dark-skinned).

74. Other employees who were similarly situated but are members of a different protected class than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of employment.

75. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her color (Dark-skinned).

76. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues to suffer, from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career

opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

77. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Defendant's treatment and actions are ongoing.

78. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

## COUNT THREE
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.
### (Employment Discrimination on the Basis of Reprisal)

79. Plaintiff engaged in protected EEO activity, and, as such, is a member of a protected class.

80. As an employee of Defendant, Plaintiff was treated differently and subjected to disparate and retaliatory treatment, in comparison to employees with no prior EEO activity, that Defendant employed.

81. Defendant has subjected Plaintiff to adverse employment actions, including her removal from the Supervisory Immigration Officer position and causing Plaintiff to receive an "Unacceptable" rating on her FY2016 PPA, and otherwise deprived Plaintiff of her rights as enjoyed by her co-workers with no prior EEO activity.

82. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment because it resulted in loss of benefits, promotional opportunities and other disadvantages in the workplace.

83. The reason(s) proffered for Defendant's unlawful conduct, including that the adverse actions taken against Plaintiff were a result of Plaintiff's poor performance, and her lack of responsibility for her alleged deficient performance, are not legitimate and would be pretext for its discriminatory conduct.

84. Defendant knew at all times during the events described throughout this Complaint that Plaintiff had engaged in prior EEO activity.

85. Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to reprisal (Prior EEO Activity).

86. Defendant has limited Plaintiff in a way that deprives her of employment opportunities, workplace benefits and otherwise adversely affects her status as an employee because of her prior EEO activity.

87. Other employees who were similarly situated but are members of a different protected class than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of employment.

88. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her prior EEO activity.

89. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues to suffer, from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

90. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Defendant's treatment and actions are ongoing.

91. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court;

a. Reinstate Plaintiff to the Supervisor Immigration Officer position, retroactive to September 1, 2016, with applicable back-pay, benefits, and interest;

b. Promote Plaintiff to a GS-15 retroactive to December 1, 2016, with applicable backpay, benefits, and interest;

c. Provide Plaintiff with a clean record of any adverse/negative personnel actions/records, including all adverse/negative PPA appraisal(s), and substitute accurate Agency records on the Plaintiff;

d. Reimburse Plaintiff 300 hours of Sick Leave she was forced to use due to the Agency's discrimination and retaliation;

e. Pay Plaintiff past pecuniary compensatory damages in their proven amount;

f. Pay Plaintiff future pecuniary and nonpecuniary compensatory damages in a proven amount not to exceed $300,000;

g. Pay Plaintiff's reasonable attorneys' fees; and

h. Award such other and further relief as this Honorable Court deems just and proper.

**EQUITABLE RELIEF**

92. Plaintiff hereby incorporates by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

93. Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present a clear and present danger to the employees of Defendant and could result in further illegal actions on the part of Defendant, by and through their respective agents, servants and employees.

   **WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

   a. Order Defendant to institute a policy and procedure to be implemented against discrimination;

   b. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

   c. Supervisory training for the supervisors at issue herein; and

   d. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury on all issues so triable.

                                        Respectfully submitted,

                                        *A. Marques Pitre, Esq.*
                                        _____
                                        A. MARQUES PITRE
                                        (D.C. Bar No. 503119)
                                        Pitre & Associates, LLC
                                        Ronald Reagan Building and
                                        International Trade Center

1300 Pennsylvania Avenue, N.W., Suite 700
Washington, DC 20004
Phone: 202-204-3006
Direct: 202-840-6797
Email: ampitre@ampitreassociates.com

*Counsel for Plaintiff*