**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| ESTHER OVIOSU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 20-2186 (RBW) |
| ) | |
| ALEJANDRO MAYORKAS, in his official ) | |
| capacity as Secretary of the United States ) | |
| Department of Homeland Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

---

## <u>MEMORANDUM OPINION</u>

The plaintiff, Esther Oviosu, brings this civil action against the defendant, Alejandro

Mayorkas, in his official capacity as the Secretary of Homeland Security, asserting the following

claims: (1) discrimination based on her race and color in violation of Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and the Civil Rights Act of 1991, 42 U.S.C. §

1981a, see Complaint ("Compl.") ¶¶ 53–78, ECF No. 1; and (2) retaliation based on prior Equal

Employment Opportunity ("EEO") activity in violation of Title VII and the Civil Rights Act of

1991, see id. ¶¶ 79–91.  Currently pending before the Court is the defendant's motion to dismiss,

or in the alternative, for summary judgment, pursuant to Federal Rules of Civil Procedure

12(b)(6) and 56.  See Defendant's Motion to Dismiss, or in the Alternative, for Summary

Judgment ("Def.'s Mot.") at 1, ECF No. 17.  Upon careful consideration of the parties'

submissions,[1] the Court concludes for the following reasons that it must deny the defendant's

motion to dismiss and grant the defendant's motion for summary judgment.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its
decision: (1) the Plaintiff's Opposition to Defendant's Motion to Dismiss, or in the Alternative, Motion for

# I.   BACKGROUND

## A.   Factual Background

The "[p]laintiff was assigned to work in the Administrative Site Visit Verification Program ('ASVVP'), Fraud Division, Fraud Detection and National Security Directorate ('FDNS'), U.S. Citizenship and Immigration Services ('USCIS')" in January 2010.  Defendant's Statement of Undisputed Material Facts ("Def.'s Facts") ¶ 1, ECF No. 17; Plaintiff's Response to Defendant's Material Facts Not in Dispute ("Pl.'s Facts Not in Dispute") ¶ 1, ECF No. 19.  At that time, "Mary Ann Case ('Case') was employed as the Branch Chief, ASVVP, Fraud Division and was [the p]laintiff's first line supervisor."  Def.'s Facts ¶ 2; Pl.'s Facts Not in Dispute ¶ 1.  "Robert Blackwood ('Blackwood') was employed as . . . [the p]laintiff's second-line supervisor."  Def.'s Facts ¶ 3; Pl.'s Facts Not in Dispute ¶ 1.

In May 2010, the "[p]laintiff expressed to Blackwood that she believe[d] that she [wa]s being discriminated [against] on the basis of her race and color" by Case, and "stated that Case had been treating her differently than 'non-black' employees."  Def.'s Facts ¶ 5; Pl.'s Facts Not in Dispute ¶ 2.  The plaintiff delivered a memorandum to Blackwood that alleged, "I feel I am not included in the [t]eam and I am not in the loop, and I am left out of major ASVVP projects and tasks which are usually assigned to the [non-]black (white) employees. . . .  Case has been treating me differently from other [non-]black employees."  Def.'s Mot., Exhibit ("Ex.") E (Unsigned Memo dated May 17, 2010 ("Letter to Blackwood")) at 197, ECF No. 17-5; Pl.'s Opp'n, Ex. 2 (Plaintiff Letter to Blackwood ("Letter to Blackwood")) at 197, ECF No. 19-2; see Plaintiff's Additional Material Facts Not in Dispute ("Pl.'s Additional Facts") ¶ 3, ECF No. 19; Defendant's Response to Plaintiff's Cross-Statement of Undisputed Material Facts ("Def.'s

---

Summary Judgment ("Pl.'s Opp'n"), ECF No. 19; and (2) the Reply in Support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Reply"), ECF No. 22.

Resp. to Pl.'s Facts") ¶ 3, ECF No. 22.  In her memorandum, the plaintiff also stated that on one

occasion Case told her "don't talk during this meeting[,]" Def.'s Mot., Ex. E (Letter to

Blackwood) at 197; Pl.'s Opp'n, Ex. 2 (Letter to Blackwood) at 197, and on a separate occasion,

the plaintiff "asked if a statement made about her attending a meeting due to another employee's

absence was about color?" Def.'s Facts ¶ 5; Pl.'s Facts Not in Dispute ¶ 2.

Between May 17, 2010, and May 27, 2010, Blackwood and Case met and discussed the

plaintiff's complaint about Case.  See Def.'s Resp. to Pl.'s Facts ¶ 4 ("Case does not recall

whether she actually received the memo, whether it was read to her by [ ] Blackwood, or whether

they just discussed [the p]laintiff's general complaint about Case."); Pl.'s Additional Facts ¶ 4.

And, "[i]n May 2010, [the p]laintiff was put under the supervision of Supervisory Immigration

Officer, Shari Golston[,] in a different branch within the Fraud Division."  Def.'s Facts ¶ 6; see

Plaintiff's Claim of Disputed Material Facts ("Pl.'s Disputed Facts") ¶ 2.

Approximately five years later, "[i]n September 2015, [the p]laintiff was hired as a

Supervisory Immigration Officer, Administrative Site Visit and Verification Branch, Fraud

Division, FDNS[,]" Def.'s Facts ¶ 7; Pl.'s Facts Not in Dispute ¶ 3, and "was the first-line

supervisor for four employees[,]" Def.'s Facts ¶ 17; Pl.'s Facts Not in Dispute ¶ 4.  "During the

time [the p]laintiff was employed as a Supervisory Immigration Officer, from approximately

September 8, 2015[,] through August 26, 2016, she was in a probationary status."  Def.'s Facts ¶

9; Pl.'s Facts Not in Dispute ¶ 3.  "James Zenny ('Zenny') . . . was [the p]laintiff's first-line

supervisor[,]" Def.'s Facts ¶ 10; Pl.'s Facts Not in Dispute ¶ 3, and Case became the plaintiff's

second-line supervisor when she "assume[d] the role of Chief, Fraud Division, FDNS" on March

31, 2016.  Def.'s Facts ¶ 18; Pl.'s Facts Not in Dispute ¶ 4.

"On or about April 29, 2016, Zenny met with [the p]laintiff and issued [the p]laintiff a mid-cycle review.  The mid-year [review] note[d] the following issue: In the beginning[,] she was reluctant to make decisions possibly in fear of making a mistake, this behavior has improved."  Def.'s Facts ¶ 22; Pl.'s Facts Not in Dispute ¶ 5.  The review also noted that the plaintiff was "keenly aware of her role and responsibilities as a first[-]line supervisor and communicate[d] to management her concerns and progression in meeting [its] priorities."  Pl.'s Additional Facts ¶ 10; Def.'s Resp. to Pl.'s Facts ¶ 10.  It also noted that "[s]he [wa]s balanced in providing her expertise and clarifying issues when there have been disagreements among fellow team members."  Pl.'s Additional Facts ¶ 11; Def.'s Resp. to Pl.'s Facts ¶ 11.  However, "[d]uring [the p]laintiff's probationary period, [another employee, Krystal Hodges,] expressed to Zenny her concerns regarding [the p]laintiff's ownership of the ASVVP program."  Def.'s Facts ¶ 33; Pl.'s Facts Not in Dispute ¶ 7.

"On August 26, 2016, [ ] Case removed [the p]laintiff from the Supervisory Immigration Officer position and reassigned [her] effective September 1, 2016[,]" without Zenny's input while Zenny was away at training.  Pl.'s Additional Facts ¶¶ 17, 22, 25–26; Def.'s Resp. to Pl.'s Facts ¶¶ 17, 22, 25.  The removal letter "stated that [the p]laintiff was being removed from the Supervisory position because [the p]laintiff had allegedly failed to 'promote collaboration and cooperation among peers and subordinates while guiding[,] motivating[,] and stimulating positive responses.'"  Pl.'s Additional Facts ¶ 29 (quoting Pl.'s Opp'n, Ex. 6 (August 26, 2016 Removal Letter) at 239, ECF No. 19-6); Def.'s Resp. to Pl.'s Facts ¶ 29.  It also stated that the plaintiff missed a deadline for a project, only worked closely with one of her four staff members, turned in important assignments shortly before they were due, and "sought 'guidance on menial tasks associated with assignments such as review and editing of the agenda items or the bi-

4

weekly ASVVP teleconference with the field in editing on the ASVVP weekly report.'"  Pl.'s

Additional Facts ¶¶ 31, 33, 35, 37, 39; Def.'s Resp. to Pl.'s Facts ¶¶ 31, 33, 35, 37, 39.  While

the removal letter explains several reasons for the plaintiff's demotion, Pl.'s Opp'n, Ex. 6

(August 26, 2016 Removal Letter) at 239–40, the plaintiff responded that Case could not identify

"the date of the deadline that was allegedly missed[,]" Pl.'s Additional Facts ¶ 31, that "Case

testified that at times having one person work on a topic or tasker is the best way to manage[,]"

id. at ¶ 34, that Case could not recall the deadlines for submissions that were turned in shortly

before the deadline, see id. at ¶¶ 23, 36, 38, and that Case did not provide emails showing that

the plaintiff sought guidance on menial tasks, see id. at ¶ 40.

   After the plaintiff was removed from her position, on December 6, 2016, she received her

2016 Fiscal Year Performance Appraisal in which she "received an Unacceptable in Competency

Number 7 'Leadership' and in Goal Number 1 'Leading People in a Quality Work

Environment.'"  Pl.'s Additional Facts ¶¶ 60–61; Def.'s Resp. to Pl.'s Facts ¶¶ 60–61.

## B.    Procedural Background

   The plaintiff filed her complaint in this case on August 10, 2020.  See Compl. at 1.  On

December 23, 2021, the defendant filed his motion to dismiss or, in the alternative, for summary

judgment.  See Def.'s Mot. at 1.  In response, the plaintiff filed her opposition to the defendant's

motion on March 7, 2022, see Pl.'s Opp'n at 1, and the defendant filed his reply in support of his

motion on May 4, 2022, see Def.'s Reply at 1.

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

   "A motion to dismiss pursuant to [Federal Rule of Civil Procedure 12(b)(6)] 'must be

made before pleading if a responsive pleading is allowed.'"  Lewis v. Schafer, 571 F. Supp. 2d

54, 57 (D.D.C. 2008) (quoting Fed. R. Civ. P. 12(b)).  In other words, "a 'defendant filing a pre-answer motion under Federal Rule of Civil Procedure 12(b) must do so before his answer is due.'"  Id. (quoting McMillian v. District of Columbia, 233 F.R.D. 179, 182 (D.D.C. 2005)).  Because the defendant previously filed an answer on December 7, 2020, see Answer, ECF No. 7, "he is precluded from now filing a motion to dismiss pursuant to [Federal Rule of Civil Procedure 12(b)(6)]."  Lewis, 571 F. Supp. 2d at 57.  Therefore, the defendant's motion to dismiss "pursuant to Rule 12(b)(6) is denied and none of the [Rule 12(b)(6)] arguments are addressed on the merits."  Id.  Accordingly, the Court will only consider the defendant's motion for summary judgment.

**B.      Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56**

A court may grant a Rule 56 motion for summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment[.]"  Id.  The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing

6

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, unsupported allegations or conclusory statements are not sufficient to defeat summary judgment, see Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp., 564 F.3d 462, 465–66 (D.C. Cir. 2009); Pub. Citizen Health Rsch. Grp. v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) ("[C]onclusory allegations unsupported by factual data will not create a triable issue of fact." (citations and internal quotation marks omitted)). And the non-moving party "must set forth specific facts showing that there [are] genuine issue[s] for trial," Anderson, 477 U.S. at 256. Therefore, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient" to withstand a summary judgment motion; rather, "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

When a non-moving party supports their position via affidavit or declaration, "[it] must set forth . . . specific facts[,]" Ass'n of Flight Attendants-CWA, 564 F.3d at 465 (internal quotation marks omitted), pursuant to Rule 56(e), "that is, it 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated,'" id. (quoting Fed. R. Civ. P. 56(e)(1)). "Although, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule." Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999); see also Dist. Intown Props. Ltd. P'ship v. District of Columbia, 198 F.3d 874, 878 (D.C. Cir. 1999)

("[T]he court must assume the truth of all statements proffered by the non-movant <u>except</u> for conclusory allegations lacking any factual basis in the record." (emphasis added)).  The plaintiff "must support [her] allegations . . . with facts in the record; a mere unsubstantiated allegation . . . creates no genuine issue of fact and will not withstand summary judgment[.]"  <u>Harding v. Gray</u>, 9 F.3d 150, 154 (D.C. Cir. 1993).

In the employment context, "[a]s employers rarely maintain records directly evidencing discrimination, 'an added measure of rigor, or caution, is appropriate in applying this standard to motions for summary judgment in employment discrimination cases.'"  <u>Woodruff v. Peters</u>, 482 F.3d 521, 526 (D.C. Cir. 2007) (quoting <u>Aka v. Wash. Hosp. Ctr.</u>, 116 F.3d 876, 879–80 (D.C. Cir. 1997)).

### III.   ANALYSIS

The defendant argues that he is entitled to summary judgment on the plaintiff's discrimination and retaliation claims because "[t]he agency had legitimate, non-discriminatory[,] and non-retaliatory reasons for its decisions, and [the] plaintiff cannot identify any evidence from which a jury could conclude that the reasons were pretext."  Def.'s Mot. at 17.  More specifically, the defendant claims that "[t]he [a]gency removed [the p]laintiff due to her unacceptable performance as a supervisor and not because of her race, [ ] color[,]" or prior EEO activity.  <u>See id.</u>  Furthermore, the defendant asserts that the agency's evaluation "is supported by legitimate, and ample, evidence in the record."  <u>Id.</u>  In response, the plaintiff argues that she "has produced sufficient evidence for a reasonable jury to find the defendant's asserted non-discriminatory reason was pretext, and that there was intentional discrimination on the basis of [the] plaintiff's race."  Pl.'s Opp'n at 24.  Moreover, the plaintiff asserts that she "has established that the [alleged adverse actions were] reprisal for [her] prior EEO activity."  <u>Id.</u> at 30.  The

Court will first determine whether the defendant is entitled to summary judgment on the plaintiff's discrimination claim, before turning to the retaliation claim.

A.      **Whether the Defendant is Entitled to Summary Judgment on the Plaintiff's Discrimination Claim**

"Title VII of the Civil Rights Act, as amended, provides that all 'personnel actions affecting employees or applicants for employment' in Executive agencies 'shall be made free from any discrimination based on race.'" Jackson v. Gonzales, 496 F.3d 703, 706 (D.C. Cir. 2007) (quoting 42 U.S.C. § 2000e-16(a)).  "Where, as here, the record contains no direct evidence that the adverse employment action of which the plaintiff complains was caused by prohibited discrimination, [the Court] turn[s] to the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–805 (1973), to analyze the claim." Jackson, 496 F.3d at 706.

"Under that framework, 'the plaintiff must [first] establish a prima facie case of discrimination.'" Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (alteration in original) (quoting Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000)).  Once a prima facie case is established, then "[t]he burden [ ] must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its actions.  McDonnell Douglas, 411 U.S. at 802.  If the defendant provides legitimate, non-discriminatory reasons for the adverse employment actions at issue, "the question [of] whether [the plaintiff] actually made out a prima facie case is 'no longer relevant' and thus 'disappear[s]' and 'drops out of the picture.'" Brady v. Off. of the Sergeant at Arms, 520 F.3d 490, 493 (D.C. Cir. 2008) (third alteration in original) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510, 511 (1993)).  The plaintiff must then prove that the defendant's proffered reason was a pretext for discrimination, see McDonnell Douglas, 411 U.S. at 805, and produce "sufficient evidence for a reasonable jury to find that the employer's

asserted nondiscriminatory . . . reason was not the actual reason and that the employer intentionally discriminated . . . against the employee[,]" <u>Walker v. Johnson</u>, 798 F.3d 1085, 1092 (D.C. Cir. 2015).

"Because the Secretary has asserted non-discriminatory justifications for [the adverse employment actions at issue—<u>viz.</u>, the plaintiff's removal from her supervisory position and the plaintiff receiving an "Unacceptable" rating in her performance review—], the Court will not consider whether [the plaintiff] made out a prima facie case of employment discrimination but will instead proceed [directly] to assessing the Secretary's rationales and [the plaintiff's] evidence of pretext." <u>Stephens v. Yellen</u>, No. 17-cv-1252 (DLF), 2021 WL 5493024, at *5 (D.D.C. Nov. 23, 2021).

### 1. Whether the Defendant Has Provided Legitimate Non-Discriminatory Reasons for the Adverse Employment Actions at Issue

The defendant argues that the "agency had legitimate, non-discriminatory[,] and non-retaliatory reasons for its decisions[.]" Def.'s Mot. at 17. More specifically, the defendant claims that:

> The [a]gency removed [the p]laintiff due to her unacceptable performance as a supervisor and not because of her race, or color. [The p]laintiff was removed due to her inability to collaborate, cooperate, and guide subordinates, untimeliness in meeting goals and deadlines, seeking guidance on menial tasks, inability to apply tools, resource, and training effectively, and the lack of sound judgment and inadequate supervisory methods.

<u>Id.</u> The defendant further states that the "[p]laintiff's performance evaluation is supported by legitimate, and ample, evidence in the record."[2] <u>Id.</u>

---

[2] The plaintiff does not contest that "the [a]gency proffer[ed] alleged legitimate non-discriminatory reasons for its removal of [the p]laintiff from her [s]upervisory position[.]" Pl.'s Opp'n at 27. Instead, the plaintiff asserts that the defendant's asserted reasons "are merely pretext for discrimination[,]" <u>id.</u>, an assertion which the Court will address <u>infra</u> Section III.A.2.

"Step two of the McDonnell Douglas analysis requires an employer to 'come forward with a legitimate reason for the challenged action.'"  Stephens, 2021 WL 5493024, at *5 (quoting Iyoha v. Architect of the Capitol, 927 F.3d 561, 566 (D.C. Cir. 2019)).  "The D.C. Circuit has recently emphasized four factors that should be 'paramount in the analysis' of whether an employer has met this burden."  Id. (quoting Figueroa v. Pompeo, 923 F.3d 1078, 1087 (D.C. Cir. 2019)).  "Namely, at step two: (1) the employer must produce evidence that would be admissible at trial for a finder of fact; (2) 'the factfinder, if it believed the evidence, must reasonably be able to find that the employer's action was motivated by a nondiscriminatory reason'; (3) the employer's justification must be 'facially credible in light of the proffered evidence'; and (4) the employer must provide a 'clear and reasonably specific explanation' for its action that is 'articulated with some specificity.'"  Id. (quoting Figueroa, 923 F.3d at 1087–88).

Here, the defendant contends that the plaintiff received her negative performance review and was removed from her supervisory position because of her "failure to satisfactorily perform her duties and responsibilities as a supervisor."  Def.'s Mot. at 20.  More specifically, in the agency's August 26, 2016 removal letter, the defendant explained that it removed the plaintiff from her position because (1) she "failed to 'promote collaboration and cooperation among peers and subordinates while guiding motivating and stimulating positive responses'"; (2) missed deadlines; (3) only worked closely with one of her four staff members; (4) turned in large assignments shortly before they were due; and (5) "sought 'guidance on menial tasks associated with assignments such as review and editing of the agenda items or the bi-weekly ASVVP teleconference with the field in editing on the ASVVP weekly report.'"  Pl.'s Additional Facts ¶¶ 29, 31, 33, 35, 37, 39 (citing Pl.'s Opp'n, Ex. 6 (August 26, 2016 Removal Letter) at 239–40); Def.'s Resp. to Pl.'s Facts ¶¶ 29, 31, 33, 35, 37, 39.

"The Court will consider [this] proffered evidence because [the plaintiff] neither contests nor objects to its admissibility; thus, the first Figueroa factor is satisfied." Stephens, 2021 WL 5493024, at *5.  The Court is also convinced that the second Figueroa factor is satisfied, as the defendant's "evidence would allow a jury to reasonably conclude that the [defendant] had neutral reasons, unrelated to race or [color], to take steps to terminate [the plaintiff's supervisory position].  Dissatisfaction with a plaintiff's performance is a legitimate and non-discriminatory reason for an adverse action." Id.; see Royall v. Nat'l Ass'n of Letter Carriers, 548 F.3d 137, 146 (D.C. Cir. 2008) (affirming the district court's holding that an employer stated a legitimate, non-discriminatory reason for an adverse employment action where the employee "understood the duties and responsibilities of the position . . . and simply failed to perform them in a satisfactory manner" (quoting Royall v. Nat'l Ass'n of Letter Carriers, 507 F. Supp. 2d 93, 106 (D.D.C. 2007)); see also Hussain v. Gutierrez, 593 F. Supp. 2d 1, 9 (D.D.C. 2008) (holding that "failure[] to perform routine duties in a timely fashion" constitutes "a legitimate non-discriminatory reason for terminating" an employee); Carter v. Greenspan, 304 F. Supp. 2d 13, 31 (D.D.C. 2004) ("Filing a Title VII action . . . is meant to shield employees from the discriminatory actions of their employers, not to excuse an employee's poor job performance, impudence, or subordination.").  In other words, the defendant "has come forward with a legitimate non-discriminatory reason for the employment action that it took: it [demoted the] plaintiff based on her job performance." Giles v. Transit Emps. Credit Union, 32 F. Supp. 3d 66, 71 (D.D.C. 2014).

Furthermore, the record evidence proffered by the defendant supports the agency's stated reasons for giving the plaintiff a negative performance review and removing her from her supervisory position.  For example, the defendant provided affidavits from (1) Jimmy Zenny, the

plaintiff's first-line supervisor; (2) Mary Ann Case, the plaintiff's second-line supervisor; and (3) Ahmed Ztaoui, one of the plaintiff's subordinates, who all allege that the plaintiff failed to satisfactorily perform her duties and responsibilities as a supervisor.  See, e.g., Def.'s Mot., Ex. C (Case Aff.) at 5, ECF No. 19-3 ("The primary issue with [the plaintiff] was her leadership. She relied on one team member, Ahmed Ztaoui, for most of the work done by the team.  After [the plaintiff] was reassigned, [ ] Ztaoui confirmed that he felt like he was the supervisor when he worked for [the plaintiff].  I got many complaints from her staff that they were not sure what the expectations were and that they felt out of the loop."); id., Ex. G (Zenny Aff.) at 3, ECF No. 19-4 ("[The plaintiff's] performance was shaky.  She had trouble in three areas.  She had problems in decision making[,] . . . knowing her program[,] . . . [and] using all her team members."); id., Ex. L (Ztaoui Aff.) at 3, ECF No. 19-8 ("[The plaintiff] had issues effectively engaging all the team members. . . .  She did not take into consideration the shortcomings of the staff and felt that all team members should be able to focus on learning the program to effectively contribute to the daily tasks and assignments.").  "If a factfinder credited this evidence, it could reasonably find that the [defendant's] action[s were] motivated by nondiscriminatory reasons—[the plaintiff's] difficulties in managing her department and communicating with her team—that rendered her unfit for her [supervisory] position.  And the proffered reasons are facially credible given the record evidence."  Stephens, 2021 WL 5493024, at *6 (citation omitted).  The fourth and final Figueroa factor is also satisfied, as the defendant's explanation is "clear and reasonably specific."  Figueroa, 923 F.3d at 1088.  Accordingly, the Court must conclude that the defendant has articulated legitimate non-discriminatory reasons for the adverse employment actions at issue.

2.   **Whether the Plaintiff Has Provided Sufficient Evidence from Which a Reasonable Jury Could Conclude that the Identified Reasons Were Pretext for Discrimination**

The plaintiff claims that "[a]lthough the [defendant] proffers alleged legitimate non-discriminatory reasons for its removal of [the p]laintiff from her [s]upervisory position and the [negative performance review], . . . those non-discriminatory reasons for removing [the p]laintiff [ ] are merely pretext for discrimination." Pl.'s Opp'n at 27. The plaintiff makes two arguments in support of this contention. First, she alleges that the August 26, 2016 letter was "fabricated" by Case, as evidenced by the fact that "Case could not elaborate on any of the alleged deficiencies" in her 2021 deposition. Id. at 26. Second, the plaintiff asserts that "prior to being removed from the [s]upervisory position, [she] had not received any notice of deficient performance[,]" which "supports an inference that intentional discrimination was a motivating factor in [her] removal" and the negative performance review. Id. at 25–27.

"Once the employer has articulated a non-discriminatory explanation for its action, . . . the issue is not 'the correctness or desirability of [the] reasons offered . . .[, but] whether the employer honestly believes in the reasons it offers.'" Fischbach v. D.C. Dep't of Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996) (alterations and second omission in original) (quoting McCoy v. WGN Cont'l Broad. Co., 957 F.2d 368, 373 (7th Cir. 1992)). The Court "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" Id. (quoting Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1982)). Rather, the plaintiff must produce "sufficient evidence for a reasonable jury to find that the employer's legitimate, non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against [her] on the basis of race." Brady, 520 F.3d at 497. Indeed, an employer's proffered "reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the

reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr., 509 U.S. at 515.

Here, the Court concludes that neither of the plaintiff's pretext arguments are availing. With respect to the plaintiff's first argument, the Court is unsurprised that Case was unable to recall specific details regarding the plaintiff's termination, given that the deposition occurred nearly five years after the events in question. See Def.'s Mot., Ex. Z (Deposition of Mary Ann Case, dated October 18, 2021). More importantly, as discussed supra Section III.A.1, the record is replete with the affidavits of other individuals who similarly alleged that the plaintiff failed to satisfactorily perform her duties and responsibilities as a supervisor. See, e.g., Def.'s Mot., Ex. G (Zenny Aff.) at 3 ("[The plaintiff's] performance was shaky. She had trouble in three areas. She had problems in decision making[,] . . . [s]he had trouble in the area of knowing her program[,] [and s]he had trouble using all her team members."); id., Ex. L (Ztaoui Aff.) at 3 ("[The plaintiff] has issues effectively engaging all the team members. . . . She did not take in consideration the shortcomings of the staff and felt that all team members should be able to focus on learning the program to effectively contribute to the daily tasks and assignments."). Accordingly, any suggestion that Case fabricated the reasons for the plaintiff's removal is undermined by the fact that the record corroborates the deficiencies listed in the evaluation and removal letter.

The plaintiff's second argument fares no better. As an initial matter, the plaintiff fails to cite any authority for the proposition that the defendant was required to provide her notice of her alleged deficiencies before removing her from the supervisory position. Furthermore, the record indicates that the agency did, in fact, inform the plaintiff of her weaknesses and performance issues during her mid-cycle review. See Pl.'s Opp'n, Ex. 10 (Mid-Cycle Review, dated April 29,

2016) (stating that the plaintiff was initially "reluctant to make decisions in fear of making a mistake"); Def.'s Mot., Ex. G (Zenny Aff.) at 3 ("I met with [the plaintiff] on April 29, 2016, for her mid-year review.  I told her about her problems in the areas of decision-making, program knowledge, and using all of her team members.").  Furthermore, Case attests that she also "gave [the plaintiff] both positive and negative feedback" throughout her probationary period.  Def.'s Mot., Ex. C (Case Aff.) at 6.  Therefore, based on the evidence before it, the Court must conclude that the defendant provided the plaintiff with sufficient notice of her performance issues before removing her from the supervisory position, even though the plaintiff has failed to provide any authority for the position that she was entitled to receive such notice.

Accordingly, for the foregoing reasons, the Court finds that "a reasonable jury could not conclude that the [adverse actions were] a result of discrimination, and [the Court must] therefore [ ] grant [ ] summary judgment" to the defendant on the plaintiff's discrimination claims.  Lathram, 336 F.3d at 1089.

## B.    Whether the Defendant is Entitled to Summary Judgment on the Plaintiff's Retaliation Claim

The Court next considers whether the defendant is entitled to summary judgment on the plaintiff's retaliation claim.  "To make out a prima facie case of retaliation, a plaintiff must show that '(1) [she] engaged in protected activity; (2) [she] was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action.'"  Hamilton v. Geithner, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quoting Woodruff, 482 F.3d at 529).  "If the plaintiff succeeds, the burden of production shifts to the defendant, who must articulate some legitimate, non-retaliatory reason for the adverse action, but the ultimate burden of persuasion remains always with the plaintiff."  Woodruff, 482 F.3d at 529 (internal citations omitted).  "Once the defendant proffers the requisite explanation, the plaintiff must 'prove by a

preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [retaliation].'" Id. (alteration in original) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).

This Court need not address whether the plaintiff has established a prima facie case because "the question whether the employee made out a prima facie case . . . is almost always irrelevant[.] [ ] [B]y the time the district court considers an employer's motion for summary judgment . . . the employer ordinarily will have asserted a legitimate, non-discriminatory reason for the challenged decision." Jones v. Bernanke, 557 F.3d 670, 678 (D.C. Cir. 2009) (second alteration in original) (internal quotation marks removed) (quoting Brady, 520 F.3d at 493). Indeed, "[n]ot only is the prima facie case irrelevant at this point, but '[the Court] need not—and should not—decide whether the plaintiff actually made out a prima facie cause under McDonnell Douglas.'" Id. Accordingly, the Court will "proceed to assessing the Secretary's rationales [for the adverse actions at issue] and [the plaintiff's] evidence of pretext.'" Stephens, 2021 WL 5493024, at *5.

### 1. Whether the Defendant Has Provided Legitimate Non-Retaliatory Reasons for the Adverse Employment Actions at Issue

As discussed supra Section III.A.1, the defendant provided a plethora of evidence supporting the agency's asserted non-retaliatory justification for removing the plaintiff from her supervisory position—viz., the plaintiff's "failure to satisfactorily perform her duties and responsibilities as a supervisor," Def.'s Mot. at 20. More specifically, the defendant articulated a comprehensive list of reasons in its August 26, 2016 removal letter, justifying the plaintiff's "unacceptable" performance rating and removal from her supervisory position. As noted earlier, the defendant explained that it removed the plaintiff from her position because (1) she "failed to 'promote collaboration and cooperation among peers and subordinates while guiding motivating

17

and stimulating positive responses[,]'" (2) missed deadlines, (3) only worked closely with one of her four staff members, (4) turned in large assignments shortly before they were due, and (5) "sought guidance on menial tasks associated with assignments such as review and editing of the agenda items or the bi-weekly ASVVP teleconference with the field in editing on the ASVVP weekly report."  Pl.'s Additional Facts ¶¶ 29, 31, 33, 35, 37, 39 (citing Pl.'s Opp'n, Ex. 6 (August 26, 2016 Removal Letter) at 239–40); Def.'s Resp. to Pl.'s Facts ¶¶ 29, 31, 33, 35, 37, 39.  And, as also noted earlier, the defendant provided affidavits from (1) Jimmy Zenny, the plaintiff's first-line supervisor; (2) Mary Ann Case, the plaintiff's second-line supervisor; and (3) Ahmed Ztaoui, one of the plaintiff's subordinates, who all alleged that the plaintiff failed to satisfactorily perform her duties and responsibilities as a supervisor.  See Def.'s Mot., Ex. G (Zenny Aff.) at 3 ("[The plaintiff's] performance was shaky.  She had trouble in three areas.  She had problems in decision making[,] . . . [s]he had trouble in the area of knowing her program[,] [and s]he had trouble using all her team members."); id., Ex. C (Case Aff.) at 5 ("The primary issue with [the plaintiff] was her leadership.  She relied on one team member, Ahmed Ztaoui, for most of the work done by the team.  After [the plaintiff] was reassigned, [ ] Ztaoui confirmed that he felt like he was the supervisor when he worked for [the plaintiff].  I got many complaints from her staff that they were not sure what the expectations were and they felt out of the loop."); id., Ex. L (Ztaoui Aff.) at 3 ("[The plaintiff] has issues effectively engaging all the team members. . . .  She did not take into consideration the shortcomings of the staff and felt that all team members should be able to focus on learning the program to effectively contribute to the daily tasks and assignments.").

Accordingly, for the reasons already discussed, the Court must conclude that the defendant has satisfied the four Figueroa factors and, thus, articulated legitimate non-retaliatory

reasons for the adverse actions at issue.  <u>See</u> <u>Stephens</u>, 2021 WL 5493024, at *5 (holding that at step two of the McDonnell Douglas analysis "(1) the employer must produce evidence that would be admissible at trial for a finder of fact; (2) 'the factfinder, if it believed the evidence, must reasonably be able to find that the employer's action was motivated by a nondiscriminatory reason'; (3) the employer's justification must be 'facially credible in light of the proffered evidence'; and (4) the employer must provide a 'clear and reasonably specific explanation' for its action that is 'articulated with some specificity.'" (quoting <u>Figueroa</u>, 923 F.3d at 1087–88)).

### 2.  Whether the Plaintiff Has Provided Sufficient Evidence From Which a Reasonable Jury Could Conclude that the Identified Reasons Were Pretext for Retaliation

The plaintiff asserts that the defendant's proffered reasons for removing the plaintiff from her supervisory position and issuing a negative performance review were merely pretext for retaliation.  <u>See</u> Pl.'s Opp'n at 34.  More specifically, the plaintiff claims that the adverse actions at issue were taken "in retaliation for [the p]laintiff engaging in [p]rior EEO [a]ctivity when [(1) in May 2010, she communicated to [ ] Blackwood that she believed [ ] Case was discriminating against her due to her race; and [(2) o]n September 16, 2016, [the p]laintiff filed an [i]nformal EEO Complaint, alleging that she was discriminated against by [ ] Case, based on her race, color, and for prior EEO activity, when [ ] Case removed her from the Supervisory Immigration Officer position on August 26, 2016."  <u>Id.</u> at 30.  In support of her contention, the plaintiff reiterates the same arguments she raised in support of her discrimination claim: (1) "the allegations made by [] Case of [the p]laintiff's deficient performance in the August 26, 2016 Removal Letter were contradicted by [ ] Case in her deposition"; and (2) the plaintiff was not "notified of any deficient performance, and only learned there were issues with her performance when she received the removal letter."  <u>Id.</u> at 35.

The Court already rejected these arguments <u>supra</u> Section III.A.2, and sees no reason to give them additional credence in the retaliation context.  Accordingly, for the reasons already discussed above, the Court finds that "a reasonable jury could not conclude that the [adverse actions were] a result of [retaliation], and [the Court must] therefore [ ] grant [ ] summary judgment" to the defendant on the plaintiff's retaliation claim.  <u>Lathram</u>, 336 F.3d at 1089.[3]

## CONCLUSION

For the foregoing reasons, the Court concludes that it must deny the defendant's motion to dismiss and grant the defendant's motion for summary judgment.

**SO ORDERED** this 15th day of July, 2024.[4]

REGGIE B. WALTON
United States District Judge

---

[3] To the extent the plaintiff alleges a claim under the Federal Tort Claims Act, <u>see</u> Compl. ¶ 7 (alleging that the defendant "is liable pursuant to the doctrine of <u>Respondeat Superior</u>"), that claim must be dismissed "because Title VII 'provides the exclusive judicial remedy for claims of discrimination in federal employment.'"  <u>Bergbauer v. Mabus</u>, 810 F. Supp. 2d 251, 258 (D.D.C. 2011) (quoting <u>Brown v. Gen. Servs. Admin.</u>, 425 U.S. 820, 835 (1976)).

[4] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.